### In re SMART.

(District Court, N. D. Ohio, E. D. April 27, 1905.)

#### No. 1,509.

BANKRUPTS—TOWNSHIP FUNDS—DEPOSITS—NATURE AND FORM.

Rev. St. Ohio, § 1513, provides that, in any township not provided with a good fire and burglar proof safe, the township funds may be deposited in some bank or other safe place, subject to the order of the treasurer. Section 1514 declares that the failure or inability on the part of an individual or corporation with whom such funds are deposited to refund the money deposited shall not release the treasurer from responsibility; and section 6841, with reference to embezzlement of public money, declares that nothing therein contained shall make it unlawful for a township treasurer, etc., to deposit any portion of the public money with any person, firm, or corporation doing a banking business under the banking laws of the state or United States, provided that such deposit shall not release the treasurer from liability for loss. *Held,* that a deposit by a township treasurer of separate township funds in a private bank under said sections was an ordinary, and not a special, trust deposit.

In Bankruptcy.

Alvord & Reynolds, for claimant.

M. B. & H. H. Johnson, for trustees.

TAYLER, District Judge. This case is here on petition for review of the finding of the referee in bankruptcy in the matter of the claim of John F. Wells as treasurer of the township of Kirtland, Lake county, and, as such, treasurer also of the board of education. The claimant, at the time of the filing of the petition in bankruptcy, had on deposit with the bankrupt, who was a banker, $2,336.17 as treasurer of the board of education, and $1,175.12 in township funds. The claim was made and the referee found that these sums were special deposits made by the claimant as treasurer, and were therefore trust funds in the possession of the bankrupt, and to be preferred in payment to the claims of the general creditors. The agreed statement of facts discloses that the claimant was the duly elected and qualified treasurer of Kirtland township; that the amounts of money which he had on deposit corresponded with the claim made by him; that, while neither the board of education nor the board of trustees for the township authorized, by resolution, the deposit of the public funds in the bankrupt's bank, yet the individual members of both boards knew that the claimant, as such treasurer, had deposited the funds in the bankrupt's bank, called the "Bank of Willoughby," and had made no objection thereto; that an ordinary passbook for a checking account was issued to and accepted by the claimant, Wells, in the name of "John F. Wells, Treasurer"; that he had deposited to the one account moneys belonging to the board of education and to the township; that he had no safe in which to keep the public funds intrusted to his care; that he had not mingled his private funds with the money so deposited, nor used the money so deposited in his private business; that the officers of the bank knew that the funds were public moneys, and that Wells held the same as treasurer for the board of education and the township, and, with such knowledge, mingled the funds so deposited with its other funds; and that the bank always had in its vaults, in money, a sum greater than the balance which from time to time the treasurer, Wells, had on deposit in the bank. The question therefore arises, was the referee right in holding that this fund was a special deposit, and entitled to payment before a dividend is allowed to the general creditors?

The authority under which a township treasurer may deposit money in a bank is found in section 1513 of the Revised Statutes of Ohio, which reads as follows:

"Sec. 1513. In any township in which there is not provided a good fire and burglar proof safe, in which to keep the funds belonging to said township, the treasurer or person intrusted with funds of the same may, by and with the consent of the trustees deposit the funds belonging to said township in some bank or other safe place, subject to the order of the treasurer making the deposit."

Section 1514 also relates to this subject, and is as follows:

"Sec. 1514. The failure or inability on the part of an individual or corporation, with whom the funds of a township are deposited, to refund the money deposited, shall not, in any way or manner release the treasurer from responsibility, but he shall be held and firmly bound for the money belonging to said township."

The ground upon which the referee based his conclusion that this deposit was special and entitled to preference was that the law does not permit the township treasurer to make anything other than a special deposit, which means, I assume, that the actual money left by the treasurer with the officers of the bank is to be kept in the form in which it is turned over, and that the title to that particular money never passes to the bank, and that, since the bank always had in its vaults an amount of currency in excess of the amount of the balance due to the township treasurer, it must be assumed to have retained such amount because of the trust impressed upon the deposit made by the treasurer. This view, it appears to me, is unsound. The statute uses the words which are universally applied to a case of a general deposit. The statement is not made that it is to be deposited in the safe of a bank, but deposited in the bank. It does not say that the treasurer may always have access to the deposit, but that it shall be subject to the order of the treasurer. These are exactly the terms upon which all general deposits are made with a bank. The claim that it is a special deposit must imply that the purpose of the statute is that the order which the treasurer may make upon the fund is an order which, being received by the bank, is to be satisfied out of the identical funds, which, in some part of the bank, it has kept segregated from the remaining assets. Section 1514 provides that the failure of the bank to refund the money deposited shall not release the treasurer from responsibility. It is a strained construction and definition of the word "refund" to say that it means to return the identical thing which was deposited. The ordinary meaning of "refund" is to repay. It does not involve an idea so concrete as the return of a package of money or the return of a particular thing. The failure of the bank to restore to the treasurer the actual thing which he deposited would imply, not the ordinary infirmities of the bank, but that it had been stolen or in some way had met with loss by accident.

Section 6841, which is a part of the criminal law, supports the view here asserted, and is contradictory of any other. After defining the subject of embezzlement of public money, section 6841 says:

"Provided, however, nothing in this act shall be so construed as to make it unlawful for the treasurer of any township, municipal corporation, board of education or cemetery association to deposit any portion of such public money with any person, firm, company or corporation organized and doing a banking business under the banking laws of the state of Ohio, or the banking laws of the United States. Provided, further, the deposit of any such funds in any such bank shall in no wise release any such treasurer from liability for any loss which may occur thereby."

This section is to be construed in connection with the others, and it shows, if it shows anything, that the treasurer may deposit, in the usual way in which deposits are made, the public funds in his hands, with any person, firm, company, or corporation organized and doing a banking business. If the deposit were special, there was no need of requiring that the depositary should be a bank. The natural and proper direction to the treasurer would have been to deposit it in a safety deposit box, or in some other place which was physically safe. The whole purpose of the law was to minister to the convenience of the public as well as of the treasurer. He is not in any sense relieved from responsibility, no matter what precautions he may take. If loss occurs, he must make it good. His bond remains liable, precisely the same as if he had not deposited in a bank at all. It would be a very unhappy situation if the general depositors in a bank, in order to make sure of the safety of their own funds, should be required to inform themselves as to how much of the deposits in the bank mingled with their own funds would be construed as special deposits made by public officials, and therefore to be satisfied before any dividend could be paid on their claims. There may have been other public officials who deposited public funds in this bank.

The claimant has no preferential right in these funds, and the decision of the referee is reversed, and the claim disallowed as a preference.